UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
MARCO MORALES,

                Plaintiff,                                     REPORT AND
                                                            RECOMMENDATION
   -against-                                     22 CV 512 (PKC)(RML)

THE BUND INC., DAVID KONG,
and JIM NGUYEN,

                Defendants.
----------------------------------------------------X
LEVY, United States Magistrate Judge:

       By order dated April 11, 2023, the Honorable Pamela K. Chen, United States District Judge, referred plaintiff's motion to enforce a settlement agreement to me for report and recommendation. For the reasons stated below, I respectfully recommend that plaintiff's motion be granted.

## BACKGROUND AND FACTS

       Plaintiff Marcos Morales ("plaintiff") commenced this wage and hour action on January 28, 2022, against defendants The Bund Inc. (the "corporate defendant"), David Kong, and Jim Nguyen (the "individual defendants" and together with the corporate defendant, "defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 301, *et seq.*, and the New York Labor Law ("NYLL") §§ 190, *et seq.* (Complaint, dated Jan. 28, 2022, Dkt. No. 1.) The parties informed the court that they had agreed to settle the case on November 18, 2022 via offer of judgment pursuant to Federal Rule of Civil Procedure 68 in the amount of $35,000 with payment due within thirty days of the court's entry of judgment. (See

Status Report, dated Nov. 22, 2022, Dkt. No. 17; see also Declaration of David Stein, Esq., filed Apr. 7, 2023 ("Stein Decl."), Dkt. No. 26, ¶ 9.)[1]

However, defendants' counsel informed plaintiff on the next business day that defendants were reneging on the agreement, that they had terminated their representation, and that defense counsel intended to move to withdraw. (See Status Report, dated Nov. 22, 2022, Dkt. No. 17; see also Memorandum of Law in Support of Plaintiff's Motion to Enforce Settlement Agreement, filed Apr. 7, 2023 ("Pl.'s Mem."), Dkt. No. 25, at 3.) Consequently, plaintiff requested forty-five days to file a motion to enforce the settlement agreement. (Status Report, dated Nov. 22, 2022, Dkt. No. 17.) Defense counsel's motion to withdraw was filed and granted on November 29, 2022, and defendants were afforded thirty days to find new counsel or be found in default. (See Order, dated Nov. 29, 2022.)[2] After multiple extensions of time to file, plaintiff filed the instant motion to enforce the settlement agreement on April 7, 2023. (See Motion for Settlement, filed Apr. 7, 2023, Dkt. No. 24.) Judge Chen referred plaintiff's motion to me on April 11, 2023.

A motion hearing was held on April 26, 2023, during which plaintiff and *pro se* defendants indicated that they intended to discuss ways to resolve the motion to enforce the settlement agreement among themselves. (See Minute Entry, dated Apr. 26, 2023.) However, the parties later reported that settlement discussions were at a standstill and that plaintiff would proceed with the motion to enforce the settlement. (See Letter of David Stein, Esq., dated June 20, 2023, Dkt. No. 27.) Defendants were ordered to file their opposition to the motion to enforce

---

[1] Although the parties contemplated preparing a written agreement to set forth some minor terms, the amount and timing of the settlement payment and the decision to resolve the case via Rule 68 offer was agreed upon. (Stein Decl. ¶ 10.)

[2] To date, neither the corporate nor individual defendants have obtained counsel.

the settlement by July 7, 2023, with any reply from plaintiff due by July 17, 2023. (See Scheduling Order, filed June 21, 2023.) The court *sua sponte* provided defendants with one last extension of time to oppose the instant motion by September 11, 2023, after defendants failed to oppose the motion by July 7. (See Order, dated Aug. 31, 2023.) To date, defendants have not filed an opposition to the motion to enforce the settlement agreement and the court accordingly recommends that it be deemed unopposed, as requested by plaintiff. (See Letter of David Stein, Esq., dated Sept. 27, 2023, Dkt. No. 28.)

### DISCUSSION

"A settlement agreement is a contract, no different in principle from any other. It arises once the parties reach complete agreement with the intention to be bound." Lee v. Hosp. for Special Surgery, No. 09 CV 1117, 2009 WL 2447700, at *2 (S.D.N.Y. Aug. 11, 2009) (citing Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985)).[3] Moreover, settlement agreements pursuant to Federal Rule of Civil Procedure 68 "are contracts to be interpreted according to ordinary contract principles." Juan Us v. Karczma Inc., No. 23 CV 864, 2023 WL 3597541, at *1 (E.D.N.Y. May 23, 2023) (quoting Electra v. 59 Murray Enters., Inc., 987 F.3d 233, 244 (2d Cir.), cert. denied, 142 S. Ct. 563 (2021).[4] The Second Circuit recently reiterated the standards that courts apply when determining whether, and to what extent, to enforce "preliminary" settlement agreements. See Murphy v. Inst. of Int'l Educ., 32 F.4th 146, 150-51 (2d Cir. 2022). Although courts should "avoid trapping parties in surprise contractual

---

[3] Although the Second Circuit has "declined to decide" whether federal or state law applies when determining the enforceability of settlement agreements, it has characterized the distinction as academic because the two bodies of law are "materially indistinguishable" in this area. See Powell v. Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007).

[4] It bears noting that settlement agreements in FLSA cases generally require judicial approval. However, "judicial approval is not required of Rule 68(a) offers of judgment settling FLSA claims." Mei Xing Yu v. Hasaki Rest., Inc., 944 F.3d 395, 398 (2d Cir. 2019).

obligations," the court in Murphy emphasized that it is "equally important" that courts "enforce and preserve" preliminary agreements that "were intended as binding, despite a need for further documentation or further negotiation." Id. at 151.

The Second Circuit has recognized two types of preliminary agreements. A "Type I" agreement "occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation." Id. at 150. Such an agreement "is preliminary only in the sense that the parties desire a more elaborate formalization of the agreement, which, although not necessary, is desirable." Id. By contrast, "Type II preliminary agreements do not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the objective within the agreed framework." Brown v. Cara, 420 F.3d 148, 153 (2d Cir. 2005). Both agreement types are enforceable, but in different ways, and subject to different damages in the event of a breach. See CapLOC, LLC v. McCord, No. 17 CV 5788, 2020 WL 1036044, at *20 (S.D.N.Y. Mar. 3, 2020) (reliance damages, but no "benefit-of-the-bargain" damages, available for a Type II breach).

Whether, and to what extent, a settlement agreement is enforceable as a Type I agreement is a question of law. See Murphy, 32 F.4th at 150. "Courts in this Circuit typically approach that question using the so-called Winston factors." Chang v. CK Tours, Inc., 605 F. Supp. 3d 529, 537-38 (S.D.N.Y. 2022). The Second Circuit's four-factor test to determine whether a party intended to be bound by the terms of an oral or unsigned settlement agreement includes whether (1) "there has been an express reservation of the right not to be bound in the absence of a writing"; (2) "there has been partial performance of the contract"; (3) "all of the terms of the alleged contract have been agreed upon"; and (4) "the agreement at issue is the type

of contract that is usually committed to writing." Winston, 777 F.2d at 80. No single factor is dispositive. See Ciaramella v. Reader's Dig. Ass'n, Inc., 131 F.3d 320, 323 (2d Cir. 1997). I will discuss each in turn.[5]

1. Express Reservation Not to be Bound

Although no single Winston factor is dispositive, courts typically allocate great weight to whether either party expressly reserved their right not to be bound absent a writing. See, e.g., Chang, 605 F. Supp. 3d at 538-39; Gromulat v. Wynn, No. 20 CV 10490, 2022 WL 445779, at *3 (S.D.N.Y. Feb. 14, 2022) ("Between the so-called 'Winston factors,' the first factor 'is frequently the most important.'") (quoting Brown, 420 F.3d at 154). In response to defendants' offer, plaintiff responded by email simply: "[w]e have a deal . . ." (Email, attached as Ex. C to the Stein Decl., dated Nov. 18, 2022, Dkt. No. 26-3), to which defendants then responded "[t]hank you." (Email, attached as Ex. D to the Stein Decl., dated Nov. 18, 2022, Dkt. No. 26-4.) Accordingly, there were no reservations expressed by the parties and this factor weighs in favor of enforcement. (See Pl.'s Mem. at 4.)

2. Partial Performance

Plaintiff acknowledges that there has not been any partial performance but notes that there was no time for any performance "because defendants backed out of the deal the next business day." (Id.) Additionally, plaintiff emphasizes that defendants "did not and have not acted as if they intended to continue with the litigation; they fired their attorney, did not hire a new one, and made no effort to prepare a pretrial order, which of course would be the next step if the case were not resolved." (Id.) "When both parties stop actively litigating the case based on

---

[5] Because I conclude that an enforceable Type I agreement was formed, I will not undertake a Type II analysis.

5

the apparent settlement, courts may construe this as partial performance." Geneva Labs. Ltd. v. Nike W. Afr. Imp. & Exp. Inc., No. 19 CV 4419, 2021 WL 7287611, at *6 (E.D.N.Y. Aug. 16, 2021) (recommending enforcement where the parties had "orally agreed to all material terms for settlement" on the court's record, only to later reach an impasse over "non-financial" written terms), report and recommendation adopted, 2022 WL 673257 (E.D.N.Y. Mar. 7, 2022). "However, lack of any performance of the terms of the settlement, such as payment of the settlement amount, can counterbalance the parties' decision to stop litigating." Id. (citing Lopez v. City of New York, 242 F. Supp. 2d 392, 394 (S.D.N.Y. 2003) ("[C]ourts within this circuit have found that this fact does not weigh for or against settlement.")).

As plaintiff notes, there is no evidence of partial performance of the agreement by either party. No settlement funds have been paid, no liens have been granted, the parties have not signed a written agreement, and the case has not been dismissed. However, aside from the instant motion, neither party has pursued litigation since the motion was filed. Accordingly, I find that this factor does not weigh for or against enforcement. See id. ("Because active litigation has not resumed and there is no evidence of partial performance, this factor does not weigh in either direction.").

    3. Existence of Open Terms

The third factor of the Winston test analyzes "whether all of the terms of the alleged contract have been agreed upon." Winston, 777 F.2d at 80; see also Est. of Andrea Brannon v. City of New York, No. 14 CV 2849, 2016 WL 1047078, at *3 (S.D.N.Y. Mar. 10, 2016) ("The Second Circuit has clarified that the third Winston factor should evaluate whether the parties have agreed 'on all *material* terms.'") (citation omitted) (emphasis in original). The most important term of a settlement agreement is the settlement amount. Gildea v. Design

6

Distribs., Inc., 378 F. Supp. 2d 158, 161 (E.D.N.Y. 2005).  If the parties have agreed to the settlement amount, courts often find that this factor favors enforcement even when the parties are still negotiating additional terms.  See Lopez, 242 F. Supp. 2d at 394 (enforcing settlement where parties agreed to settlement amount but were negotiating terms that were neither substantial nor material); Pretzel Time, Inc. v. Pretzel Int'l, Inc., No. 98 CV 1544, 2000 WL 1510077, at *4 (S.D.N.Y. Oct. 10, 2000) (finding this factor favored enforcement when the parties orally agreed to a settlement in principle and party challenging enforcement did not immediately object).

Here, the parties specified the amount of payment and the time in which the payment was to be made.  (See Pl.'s Mem. at 4; Stein Decl. ¶ 9 ("The material terms of the agreement were simple: defendants would issue an offer of judgment to plaintiff pursuant to Fed. R. Civ. P. 68, in the amount of $35,000, . . . plaintiff would file his acceptance of the offer, and payment would be due within 30 days of the court's entry of judgment.").)  I therefore find that this factor weighs in favor of enforcement.

4. Type of Agreement Typically Committed to Writing

"Settlements are generally required to be in writing or made on the record in open court."  Geneva Labs. Ltd., 2021 WL 7287611, at *8 (citing N.Y. C.P.L.R. § 2104 (McKinney 2003)).  To determine whether a settlement agreement must be committed to writing, courts assess the complexity of the agreement based on: "(1) the amount of money at issue, (2) whether the terms of agreement will carry into perpetuity, and (3) the length and complexity of the agreement itself."  Id.  The agreement at issue here is not complex.  It involves only $35,000 that was to be paid in a lump sum within thirty days of the court's entry of judgment.  (See Stein Decl. ¶ 9.)  Furthermore, plaintiff contends that the agreement was in fact committed to a writing

containing the material terms, albeit in "abbreviated form." (Pl.'s Mem. at 4.) Accordingly, I find that this factor weighs in favor of enforcement.

The weight of the Winston factors supports a finding of an enforceable, Type I agreement. I therefore respectfully recommend that plaintiff's unopposed motion to enforce the settlement agreement be granted.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiff's motion to enforce the settlement agreement be granted. Any objections to this report and recommendation must be filed electronically or with the Clerk of Court, with courtesy copies to Judge Chen, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
October 16, 2023